UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LARRY G. MOSLEY | ) | Case No. 19-40426 |
| | ) | |
| Debtor | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| | ) | |
| TYRON HARPER | ) | Adv. No. 19-04026 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LARRY G. MOSLEY | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM

This matter came before the Court for trial on May 13, 2021. Both the Plaintiff, Tyron Harper ("Plaintiff"), and the Defendant, Larry G. Mosley ("Defendant"), appeared with counsel. The Court considered the testimony and exhibits presented at trial on Plaintiff's complaint. At the conclusion of the trial, the Court left the evidentiary record temporarily open for the limited purpose of listening to and considering a recording of the 2004 examination of Anita Mosley, the ex-wife of Defendant, which occurred on October 24, 2019.

## FINDINGS OF FACT

Plaintiff and Defendant both worked in the salvage and scrap business and have known each other through a business relationship for around fifteen years. Plaintiff owned and operated a business called Harper Salvage and Sales, located at 44 Livingston Cemetery Road in Fredonia,

Kentucky. Defendant owned his own scrapyard. Early on in their business relationship, Defendant would occasionally purchase scrap from Plaintiff and crush cars for him.

Some time prior to May 27, 2016, Defendant approached Plaintiff regarding the purchase of Harper Salvage and Sales. On May 27, 2016, the parties reached an agreement and signed a contract (the "Sale Agreement") for the sale of the business from Plaintiff to Defendant. The Sale Agreement specified that the Defendant would purchase Harper Salvage and Sales for $2,000,000 and would assume and pay off a $286,854.97 loan balance owed by Plaintiff to Fredonia Bank. At the closing of the transaction, Plaintiff was paid $499,181.53 as a "down payment" for the business. Within ninety days of the closing, Defendant paid off the Fredonia Bank loan.

In addition to and on the same day as the Sale Agreement, a promissory note (the "Note") was executed between Plaintiff and Defendant for the remaining $1,500,000 owed on the sale. The Note called for the payment of three yearly payments of $500,000. Throughout each year, Defendant was to pay Plaintiff at least 50% of the proceeds from the sale of scrap metal and vehicles from the purchased scrapyard. The Note also called for Defendant to pay Plaintiff a "reasonable percentage" of the proceeds from selling crushed vehicles at Defendant's other scrapyard locations. Unfortunately for Plaintiff, no mortgage or other security instrument was ever executed in relation to the sale of Harper Auto Salvage.

After the Sale Agreement occurred and Defendant took over the management of the scrapyard now known as Mosley's Auto Salvage, LLC ("MAS"), the financial and management condition of MAS fell into poor condition. Plaintiff became worried about whether he would be paid the remaining installments. Plaintiff testified that he visited the scrapyard many times – by his own estimate, over 20 times – to ask about when he should expect to receive payments. According to Plaintiff, Defendant would tell him that his wife Anita was the one who managed the

books and checks, and so she would need to write a check to Plaintiff for the payment. After these many visits and attempts to collect payments for the money owed to him, Plaintiff was only paid about $17,500.00 of the $1.5 million he was owed.

On February 2, 2018, Defendant filed a divorce action against Anita. Defendant's presence and involvement with MAS decreased significantly following the divorce. After becoming frustrated with the lack of payment from Defendant, Plaintiff filed a lawsuit against Defendant in Caldwell Circuit Court on July 19, 2018, and on August 20 that court issued a temporary injunction to halt the sale of further assets from MAS. By that time, MAS had been closed. Defendant filed a petition for Chapter 7 relief on May 6, 2019, and Plaintiff filed his complaint to initiate this adversary proceeding on October 15, 2019, seeking a ruling that Defendant's unpaid debt to him is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and venue is proper under § 1409(a). The parties have submitted to the jurisdiction of this Court.

The arguments presented by Plaintiff's counsel, both in pleadings and oral arguments at trial, were based on Plaintiff's claim under § 523(a)(2)(A) of the Bankruptcy Code; Plaintiff did not press or argue his claim under § 523(a)(6). Accordingly, at the conclusion of oral arguments, the Court entered a judgment on partial findings pursuant to Fed. R. Civ. P. 52, made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7052, in favor of Defendant on Plaintiff's §523(a)(6) claim. The Court now turns to Plaintiff's remaining claim under § 523(a)(2)(A), which provides:

3

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

To succeed on a claim made under § 523(a)(2)(A), a plaintiff must prove by a preponderance of the evidence each element to support a determination that a debt is non-dischargeable. *In re Layne*, 517 B.R. 778, 781 (Bankr. E.D. Ky. 2014). All exceptions to discharge are construed against the creditor. *Manufacturer's Hanover Trust v. Ward* (*In re Ward*), 857 F.2d 1082, 1083 (6th Cir. 1988). A finding of fraud such that the resulting debt is nondischargeable under § 523(a)(2)(A) requires proof of the following elements by a preponderance of the evidence:

> (1) the debtor obtained money through a material misrepresentation, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998).

The Court focuses its analysis on the second element, "the debtor intended to deceive the creditor," and finds that Plaintiff failed to meet his burden and prove this element by a preponderance of the evidence. While Plaintiff certainly made a strong case for breach of contract, he did not present evidence showing that Defendant intended to deceive Plaintiff at the time of the Sales Agreement. Instead, the testimony and record suggest that Defendant mismanaged MAS after he bought it, had a very poor handle on the company's financial operation, and drove both the business and his own financial condition into the ground. The Court finds it appropriate to

4

consider the utter lack of any benefit to Defendant personally resulting from his failure to repay Plaintiff. The evidence suggests a business operation gone very wrong, not an intentional scheme by Defendant to withhold money owed for his own personal gain.

Plaintiff also pointed to the 2004 examination of Anita Mosley as evidence of Defendant's intent to deceive when he agreed to pay installments. In the following exchange, Anita Mosley discussed the issue of intent to pay back the remaining installments on the loan:

> Q. What was your understanding of the agreement with Ty Harper?
> A. I didn't really know. It wasn't my deal.
> Q. Did you believe that the $500,000 was it, as far as what was owed to him?
> A. Well, it wasn't owed to him. We paid him $500,000, and he accepted that as a payment for the property.
> Q. Did you believe that any other monies were owed?
> A. At the time, no.
> Q. Was it your intention at that time to pay him any other money?
> A. At the time, no.

Doc. 64, *2004 Examination of Anita Mosley*, Pp. 39-40. Thus, Anita Mosley testified that at the time of the Sales Agreement she did not intend to pay additional money to Plaintiff beyond the roughly $500,000 down payment for the property. However, this same testimony establishes that she had no such intention because she did not believe the money was owed, which is evidence of a misunderstanding, not deceit. Furthermore, she testified that the Sales Agreement "wasn't [her] deal," and that she didn't know much about it. Most importantly, Anita Mosley's testimony goes to her own understanding and intent, not Defendant's, and she was not a party to the Sales Agreement. There is no testimony in Anita Mosley's 2004 examination that suggests Defendant intended to deceive Plaintiff at the time of the agreement.

Much of the parties' argumentation focused on whether Defendant was competent and understood how much he was agreeing to pay back. Defendant's counsel suggested that the Defendant's poor reading skills led him to not understand what he was agreeing to, while Plaintiff's

counsel presented testimony that Defendant did seem aware of the nature and terms of the repayment agreement. Even if this Court assumes that Defendant was fully aware of the terms, Plaintiff still failed to prove that Defendant intended to deceive when he agreed to pay the remaining sales balance. Instead, the record is replete with indications that MAS was poorly operated, its finances were not managed, and it had to be shut down within two years of Defendant purchasing it. In the Court's opinion, the following line from Anita Mosley's 2004 examination provides both an accurate description of MAS's management and the best explanation for why the business failed and Plaintiff was not paid back: "It was a very redneck operation[.]" Doc. 64, pg. 65. The testimony and record evidence demonstrate that it was Defendant's failure to properly manage the business, not an intentional deception at the time of the Sales Agreement, that caused the unfortunate situation between him and Plaintiff.

Because Plaintiff has failed to prove by a preponderance of the evidence that Defendant intended to deceive him, he has failed to meet all the elements for nondischargeability under § 523(a)(2)(A). Plaintiff's debt will not be excepted from discharge. A judgment accompanying this memorandum has been entered this same date.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: May 26, 2021

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LARRY G. MOSLEY | ) | Case No. 19-40426 |
| | ) | |
| Debtor | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| TYRON HARPER | ) | Adv. No. 19-04026 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LARRY G. MOSLEY | ) | |
| | ) | |
| Defendant | ) | |

**JUDGMENT**

Pursuant to the Court's Memorandum entered this date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the complaint filed by the Plaintiff, Tyron Harper, is **DISMISSED**. This is a final and appealable order and there is no just reason for delay.

_Alan C. Stout_
Alan C. Stout
United States Bankruptcy Judge

Dated: May 26, 2021